UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FRANK MONFRA                                    CIVIL ACTION

VERSUS                                          NO. 12-2858

CAROLYN W. COLVIN, ACTING                       SECTION "N" (2)
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION


**FINDINGS AND RECOMMENDATION**

Plaintiff, Frank Monfra, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for

supplemental security income benefits ("SSI") under Title XVI of the Act. 42 U.S.C. §§

405(g), 1381a. This matter was referred to a United States Magistrate Judge pursuant to

28 U.S.C. § 636(b) and Local Rule 73.2(B).

As ordered, Monfra filed a memorandum of facts and law. Record Doc. No. 18.

The Commissioner filed a timely reply memorandum. Record Doc. No. 19.

I.    PROCEDURAL HISTORY

Monfra filed an application for SSI on May 24, 2010, alleging disability since

April 21, 2010, due to chronic obstructive pulmonary disease ("COPD"), emphysema,

degenerative disc disease of the lumbar spine, irregular heartbeat, osteoarthritis of the

right hip and right knee, a hernia and poor vision. (Tr. 42, 105, 119). After his

application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 3, 2011.  (Tr. 20-39).  On June 10, 2011, the ALJ issued a decision denying plaintiff's application for SSI.  (Tr. 9-16).  After the Appeals Council denied review on October 11, 2012, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review.  (Tr. 1-3).

II.    STATEMENT OF ISSUES ON APPEAL

       Plaintiff contends that the ALJ made the following errors:

       A.    The ALJ erred in affording little weight to the consultative examiner's report.

       B.    The ALJ erred in determining plaintiff's credibility.

       C.    The ALJ erred by composing a vague residual functional capacity assessment.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

       The ALJ made the following relevant findings:

       1.    Monfra has not engaged in substantial gainful activity since the application date of May 4, 2010.

       2.    He has severe impairments of COPD,[1] degenerative disc disease of the lumbar spine and osteoarthritis of the right hip and right knee.

       3.    Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional

---

[1]Chronic obstructive pulmonary disease is a "general term used for those diseases with permanent or temporary narrowing of small bronchi, in which forced expiratory flow is slowed, especially when no etiologic or other more specific term can be applied."  Stedmans Medical Dictionary "disease" (27th ed. 2000), avail. on Westlaw at STEDMANS 116330.

limitations: he must be able to sit and stand alternately at will, provided he is not off task for more than ten percent of the work period; he can never climb ladders, ropes or scaffolds; he can occasionally climb ramps and stairs, kneel, crouch and crawl; and he must avoid concentrated exposure to irritants, poorly ventilated areas and chemicals.

4.      Although his medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

5.      He has no past relevant work.

6.      Considering Monfra's age, education and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform, such as security guard, ticket taker and cashier.

7.      Plaintiff has not been under a disability since May 4, 2010, the date of his application.

(Tr. 11-16).

IV.    PLAINTIFF'S APPEAL

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."  Newton, 209 F.3d at 452.  The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§

4

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2010).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."  Martinez, 64 F.3d at 174.

B.     Factual Background

Plaintiff testified that he is 53 years old, completed seventh grade and never tried to get a GED.  He said he is not married, but has a girlfriend who sometimes stays with him.  (Tr. 24-25).

Monfra stated that he has no income other than food stamps and an occasional odd job.  He testified that he has no health insurance, Medicare or Medicaid.  He said he had last tried to work about a week before the hearing, but was unable to do so because his hip gave out and he kept falling.  He said he also "couldn't breathe and I couldn't catch my wind."  He could not remember the last time he worked full-time on a regular basis, but confirmed a notation in his medical records that he had worked with a friend doing odd jobs for about a week in September or October 2010.  (Tr. 25-26).

Plaintiff testified that no doctor has recommended that he have back surgery.  He said he had upcoming appointments at Leonard J. Chabert Medical Center in May, June and August 2011, one of which was with a neurologist or neurosurgeon.  He stated that

his only medications are an inhaler for COPD and a pain pill for arthritis.  He testified that he uses the inhaler every day when he needs it.  He said he still smokes, but has cut down to one pack per day.

Monfra said that the pills do not help his arthritis pain.  (Tr. 26-27).  He stated that he only takes the pills when he needs them, which is about every two days.  He said his doctors have not told him any of the test results regarding his back, but they just give him another appointment to see someone else.  He testified that he had a surgical hernia repair in April 2010 and that the area of surgery still hurts.  (Tr. 27-28).

Plaintiff stated that the arthritis and pain begins in his back and goes down through his right hip and knee.  When the ALJ told him that his medical records include a CAT scan showing that he has a cyst on his kidney, Monfra said it was the first time he has heard of that.  He believed he was scheduled for some pulmonary testing in May 2011 and that he had two other appointments later in the summer, but he did not know the purpose of those appointments.  He testified that one doctor told him he might need to go on oxygen, but he had heard nothing more about it.

Monfra confirmed a notation in  his medical records that he used to drink a case of alcohol on a Friday when he got off work.  He stated that he does not drink that much anymore, but will drink a beer when he occasionally goes to visit a friend.  (Tr. 29).

Plaintiff testified that his worst problem is with his breathing.  He said that he has trouble sleeping and eating because he cannot catch his breath.  He stated that his hip

goes out occasionally and that "[t]hey come and pick me up and take me to the hospital for it, because I can't move."  He estimated he could walk no more than one block or for 15 minutes before he needs to stop and rest.

Monfra said he cannot sit longer than 15 to 20 minutes.  He stated that he was in pain while sitting at the hearing.  He testified that he has to get up and move around for 15 to 20 minutes before he can sit again.  He said he can only lift six or seven pounds without putting a strain on his back.  He stated that going up and down stairs is "real rough" because of his breathing and that he has to sit and take a break on the stairs if there are too many steps.  (Tr. 31).

Plaintiff said he has been told to use his inhaler twice a day, but he uses it at least three to four times a day sometimes.  He testified that the pain medicine he had been given does not work.  He stated that the pain stays in his lower back and right hip, but also said that it varies and that the pain comes and goes.  He testified that he has one or two pain-free days every week or two, but sometimes the pain stays with him all the time.  (Tr. 32).  He stated that either bending over a lot or reaching up will bring on the pain in his back.

Monfra testified that some of the medication he has been given makes him forget what he is doing.  He said he mostly stays home and sits around the house.  He stated that he sometimes tries to help clean the house, but he cannot do it and "the wife, you know,

the old lady . . . does it" while he sits down.  He testified that he no longer has a driver's license.  (Tr. 33).

Plaintiff stated that he has concerns about his weight loss and that his doctors asked him whether he had a family history of cancer.  When he told them that he did, they did a colon test, which reportedly showed nothing.  He said he had not heard any results from a prostate test.  He does not know why he has been losing weight.  He said he is five feet seven inches tall and weighs 120 pounds.  He stated that his normal weight was around 135 to 145 pounds.  (Tr. 34).

### C.   Vocational Expert Testimony

The ALJ said she saw nothing in the record to indicate that Monfra ever had earnings at the level of substantial gainful activity.  A vocational expert, Patricia Ehlinger, testified that the record indicates that, during the past 15 years, plaintiff worked as a landscaper for about a year, which is unskilled work, and as a painter for 13 years. She stated that these jobs would be past relevant work if Monfra met the earnings level. (Tr. 35).

The ALJ posed a hypothetical of a person of the same age, education and past work experience as plaintiff with the residual functional capacity to lift up to 20 pounds occasionally and lift and carry up to ten pounds frequently in light work as defined by the regulations.  The hypothetical person can never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, kneel, crouch and crawl; and must avoid

concentrated exposure to irritants, poorly ventilated areas and chemicals.  (Tr. 35-36).

Ehlinger testified that such a person could perform light, unskilled work as a security

guard, usher or cashier, which are jobs that are available in the state and national

economies.

The ALJ posed a second hypothetical that included the same qualifications and

limitations as above, with the additional restriction that the claimant needs to sit or stand

alternately at will, provided that he would not be off task more than ten percent of the

work period.  Ehlinger stated that such a person could perform other light, unskilled jobs,

such as security guard, ticket taker and cashier, which are available in the state and

national economies. (Tr. 36-37).

The ALJ then added a limitation that the hypothetical individual, as a result of

medical conditions and associated pain, cannot engage in sustained work activity on a

regular and continuing basis for eight hours per day, five days per week, or an equivalent

40-hour work week.  Ehrlinger testified that a person in this third hypothetical situation

would not be able to perform any jobs.

Upon questioning by plaintiff's attorney, Ehrlinger explained that landscaping

work is unskilled and that a painter is classified as skilled, while some are semiskilled.

She said she would have to delve into the exact nature of the work to classify it.  She

testified that Monfra would have no skills transferable to sedentary work.  (Tr. 37).

D.     Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 11-14).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.     Plaintiff's Appeal

1.     Substantial evidence supports the ALJ's decision to afford little weight to the consultative examiner's report.

At the fourth step of the sequential evaluation, the ALJ must determine, based on all of the relevant medical and other evidence in the record, the claimant's residual functional capacity, which is defined as his ability to do physical and mental tasks on a sustained basis despite limitations from his impairments.  Cline v. Astrue, 577 F. Supp. 2d 835, 847-48 (N.D. Tex. 2008) (citing Perez, 415 F.3d at 462; 20 C.F.R. § 416.945(a)(3)).

Monfra argues that the ALJ erred by affording little weight to the opinion of an examining physician, Isolde Butler, M.D.,[3] who examined him at the agency's request on October 30, 2010, and by failing to discuss the contradictory opinion of a non-examining physician, Emily Eisenhauer, M.D., who reviewed his medical records on

---

[3]Dr. Butler's report does not indicate her specialty.  According to the website of the Tulane University School of Medicine, she received her medical degree in 2005 and completed her residency in internal medicine in June 2009. http://tulane.edu/som/departments/medicine/tmcid/people/isolde-butler.cfm (last visited August 9, 2013).

November 17, 2010.  Plaintiff contends that the ALJ erred by failing to adopt Dr. Butler's opinion that Monfra "should be able to sit for very short periods of time limited by back pain, walk half a block limited by breathing, and stand for about half an hour at a time. He can lift/carry only very light objects and should avoid repetitive bending." (Tr. 196). Monfra asserts that the ALJ erroneously relied on Dr. Eisenhauer's opinion.

The ALJ stated that she accorded "great weight to the record as a whole" and gave "only some (little) weight to [Dr. Butler's] opinion . . . because I find that there are insufficient objective tests in the medical evidence of record to justify such extreme limitations." (Tr. 14).  The ALJ did not discuss Dr. Eisenhauer's findings or any weight that she might have accorded to those opinions.

Citing Villa v. Sullivan, 895 F.2d 1019, 1023-24 (5th Cir. 1990), Monfra contends that the ALJ erred by relying upon a non-examining physician's opinion over the conflicting opinion of an examining physician when substantial evidence supports the examining doctor's evaluation.  The Fifth Circuit held in Villa that an ALJ's findings may not be supported by substantial evidence "when a non-examining physician makes specific medical conclusions that either contradict or are unsupported by findings made by an examining physician . . . .  We believe an ALJ may properly rely on a non-examining  physician's assessment when, as in this case, those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician."  Villa, 895 F.2d at 1024.

12

When weighing medical opinions, the ALJ has considerable discretion and is free to reject the opinion of any physician if the evidence supports a contrary conclusion.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d), (e); Myers v. Apfel, 238 F.3d 617, 621 (5th Cir. 2001); Loza, 219 F.3d at 395; Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994); Spellman v. Shalala, 1 F.3d 357, 364 (5th Cir. 1993).  For good cause shown, the ALJ may discount, or even disregard entirely, the opinion of an examining physician. Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999).  The ALJ may give less weight to a physician's opinion when the opinion is so brief and conclusory that it lacks strong persuasive weight, is not supported by medically acceptable clinical or laboratory diagnostic techniques, or is otherwise unsupported by the evidence.  Myers, 238 F.3d at 621; Leggett v. Chater, 67 F.3d 566; Spellman, 1 F.3d at 364.

Substantial evidence supports the ALJ's findings in this case.  The only medical evidence that was in the administrative record (see Tr. 43-44, list of evidence) when Dr. Butler examined Monfra on October 30, 2010 were records from West Jefferson Medical Center concerning an emergency room visit on May 23, 2010, where plaintiff was treated for dyspnea[4] and COPD exacerbation (Tr. 161-80); a letter to the agency from another consultative examiner, Christy L. Valentine, M.D., stating that plaintiff had presented for his scheduled appointment obviously intoxicated, began cursing and lit a cigarette when

---

[4]Dyspnea is "[s]hortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the heart or lungs; occurs normally during intense physical exertion or at high altitude." Stedmans Medical Dictionary "dyspnea" (27th ed. 2000), avail. on Westlaw at STEDMANS 122310.

she walked into the room, at which point she decided that he should leave without completing the evaluation (Tr. 186); and the results of pulmonary function tests performed on August 30 and signed by Dr. Valentine on September 5, 2010, which stated that Monfra had exhibited fair cooperation during the testing but was intoxicated, and that the tests showed mild airways obstruction.  (Tr. 187-92).

Dr. Butler stated that she had reviewed unspecified medical records provided by the Social Security agency.  She mentioned only a chest x-ray report dated May 23, 2010 from West Jefferson Medical Center, which revealed changes of COPD with extensive bullous emphysematous disease[5] of both upper lobes, greater on the right, and calcified granuloma in the left lower lobe.  (Tr. 194).  Dr. Butler did not include in her report the chest x-ray report's statement that the study had been compared to a prior exam dated April 13, 2009 and that the radiographic findings were unchanged from that date.  Dr. Butler obviously did not review the August 30, 2010 pulmonary function test results because she stated that Monfra's symptoms were "suggestive of chronic obstructive

---

[5]Emphysema is a
> condition of the lung characterized by increase beyond the normal in the size of air spaces distal to the terminal bronchiole (those parts containing alveoli), with destructive changes in their walls and reduction in their number.  Clinical manifestation is breathlessness on exertion, due to the combined effect (in varying degrees) of reduction of alveolar surface for gas exchange and collapse of smaller airways with trapping of alveolar gas in expiration; this causes the chest to be held in the position of inspiration ("barrel chest"), with prolonged expiration and increased residual volume.

Id. "emphysema," at STEDMANS 128740.

pulmonary disease (COPD) though it can only be definitively diagnosed with pulmonary function testing."  (Tr. 196).

Based on plaintiff's self-reported history, his subjective complaints, the chest x-ray report and a thorough physical examination, Dr. Butler diagnosed COPD, lumbar osteoarthritis with possible disc herniation, and right knee osteoarthritis.  (Tr. 196).  The ALJ found that plaintiff's severe impairments included these three conditions, with the exception of disc herniation.  Regarding his back pain, Dr. Butler noted that Monfra was scheduled to have an MRI and that such a study would be necessary to diagnose a herniated disc, which may have been caused by a fall that he reported having in the last two to three months.  (Tr. 194, 196).

Dr. Butler observed that plaintiff continued to smoke a pack of cigarettes daily. She stated that his smoking would cause his illness to progress if he did not stop and that his disease would not improve much even if he stopped.  Her only objective findings regarding Monfra's pulmonary disease were distant breath sounds and the prior chest x-ray.  As to his musculoskeletal complaints, Dr. Butler's only objective findings were decreased range of motion upon flexion of plaintiff's right hip, tenderness over his lower back, pain upon maneuvers and crepitus in his right knee, and an inability to squat.  (Tr. 196).

Dr. Butler's opinions are not supported by some of her own findings.  Notably, she found that Monfra had good tone and strength in all muscle groups.  He had normal

reflexes and no muscle atrophy, wasting, weakness, joint deformity or swelling. Although he had a rightward limp, he was able to ambulate without assistance, rise from a sitting position, bend, stand on tiptoes, and heel and tandem walk without problems. Straight leg raise test was negative. His respirations were full and symmetrical without the use of accessory muscles and he had vesicular (normal) breath sounds throughout his peripheral lung fields.[6] He had no increase in anteroposterior diameter, no obvious chest wall deformity, and no wheezes, rhonchi, rales or rubs (abnormal breath sounds).[7] Given the few objective findings of plaintiff's conditions, it appears that Dr. Butler based her opinions primarily on his subjective complaints.

Dr. Butler did not have the opportunity to review the later-conducted objective testing. A lumbar spine x-ray taken on December 2, 2010 at Chabert Medical Center revealed that the intervertebral disc spaces were well maintained with a small anterior osteophyte on L5, while a right hip x-ray revealed only early degenerative changes. (Tr. 252-53). An MRI of plaintiff's lumbar spine on December 16, 2010 at Interim LSU Public Hospital demonstrated some straightening of the lordotic curvature with otherwise normal vertebral configuration, alignment and signal density; moderate dessication and bulging of the L4-5 disc, but no definite protrusion; and less prominent bulges at L3-4

---

[6]The Merck Manual, "Evaluation of the Pulmonary Patient"
http://www.merckmanuals.com/professional/pulmonary_disorders/approach_to_the_pulmonary_patie
nt/evaluation_of_the_pulmonary_patient.html (last visited August 9, 2013).

[7]Id.

and L5-S1.  (Tr. 212).  No herniation was identified.  As the ALJ noted in discounting Dr. Butler's opinion, the objective tests do not substantially support the severe limitations that Dr. Butler assessed.

Dr. Eisenhauer, the agency consultant, reviewed the available medical records, including Dr. Butler's report, on November 17, 2010.  She opined that Monfra has COPD and osteoarthritis.  However, she found that he is capable of performing light work because he can lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for about 6 hours in a workday and stand and/or walk for about 6 hours in a workday, with additional limitations of never climbing ladders, ropes or scaffolds; occasionally kneeling, crouching, crawling or climbing of ramps or stairs; and avoiding concentrated exposure to fumes, odors, dusts, gases and poor ventilation.  (Tr. 47-48).  Dr. Eisenhauer based her conclusions on the "min MER [minimal medical evidence of record]," which "does not demonstrate the level of severity alleged.  Allegations may be partially credible, but [Monfra] appears capable of activities within the parameters of this [residual functional capacity]."  (Tr. 48).  Dr. Eisenhauer's findings were the basis of the agency's initial denial of plaintiff's application for SSI.

Subjective complaints of pain or other symptoms must be corroborated by objective medical evidence, Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)), and such complaints may be discounted when the alleged symptoms are not consistent with the objective

medical evidence.  <u>Brown v. Astrue</u>, 344 F. App'x 16, 21 (5th Cir. 2009); <u>Hernandez v. Astrue</u>, 278 F. App'x 333, 340 (5th Cir. 2008) (citing <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992)); <u>Dunbar v. Barnhart</u>, 330 F.3d 670, 672 (5th Cir. 2003).

"State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 404.1527(f)(2)(i).  "Although ALJs 'are not bound by any findings made by State agency medical or psychological consultants,' they must consider such findings as opinion evidence."  <u>Alejandro v. Barnhart</u>, 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (quoting 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i)); <u>accord</u> <u>Butler v. Barnhart</u>, 99 F. App'x  559, 560 (5th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i).

The ALJ in this case did <u>not</u> say that she gave great weight to Dr. Eisenhauer's opinions and she did <u>not</u> completely accept those opinions.  Instead, the ALJ gave great weight to the <u>entire</u> record, which spans May 23, 2010 to January 27, 2011 and includes considerable records from West Jefferson Medical Center, Jefferson Community Health Care Center and Chabert Medical Center that were submitted after the initial denial of benefits.  Unlike Dr. Eisenhauer, the ALJ did <u>not</u> find that plaintiff could either sit or stand and/or walk for up to six hours in an eight-hour workday.  Instead, the ALJ found that he must be able to alternate sitting and standing at will.

The ALJ's decision shows that she carefully considered the entire record, but ultimately rejected Dr. Butler's conclusions that plaintiff could only sit for very short periods of time, walk half a block, stand for half an hour at a time and lift/carry only very light objects.  "[T]he Act empowers the ALJ to analyze the physicians' testimony. Substantial evidence supports the ALJ's decision to disregard [Dr. Butler's] conclusions. That basis is enough to survive our review."  Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ's weighing of the physicians' opinions is substantially supported by the evidence in the instant case.

Dr. Butler's findings of extreme limitations in plaintiff's abilities to sit, walk, lift, carry and bend are also contradicted by the entirety of plaintiff's treatment records.  The court decisions following Villa have clarified that "[w]hen multiple physicians have examined a claimant, the ALJ may properly rely on a non-examining physician's assessment that is supported by medical findings by one of the examining physicians." Cline, 577 F. Supp. 2d at 844-46 (citing Johnson v. Apfel, 234 F.3d 705, 2000 WL 1598004, at *1 (5th Cir. Sept. 27, 2000)).

An ALJ has good cause to give an examining physician's opinion little weight when it is inconsistent with the claimant's treating records, and the ALJ may afford great weight to the opinion of a non-examining physician when it is consistent with and not contradicted by the treatment records.  Johnson, 2000 WL 1598004, at *1 (citing Villa, 895 F.2d at 1022-24); Ranes v. Astrue, No. 3:08-CV-2030-D, 2009 WL 2486037, at *12

19

(N.D. Tex. Aug. 14, 2009); Cline, 577 F. Supp. 2d at 844-46 (citing Johnson, 2000 WL 1598004, at *1; Carrier v. Sullivan, 944 F.2d 243, 246 (5th Cir. 1991); Villa, 895 F.2d at 1024).

Plaintiff's reliance on Villa is therefore misplaced because (1) the ALJ did not give great weight to Dr. Eisenhauer's opinion regarding his ability to sit or stand and/or walk for up to six hours in an eight-hour day; (2) Dr. Butler's opinion regarding plaintiff's limitations is contradicted by medical evidence from his treating physicians; and (3) Dr. Eisenhauer's opinion, to the extent that the ALJ did rely on it, is supported and not contradicted by Monfra's treatment records.

The ALJ noted the presence of several inconsistencies in the record, which are substantially supported by the evidence, that undermine Dr. Butler's conclusions. Other inconsistencies include Monfra's report to Dr. Butler on October 30, 2010 that he "has been hospitalized for his shortness of breath on several occasions, the last time being a few months ago. He reports requiring care from the emergency room about every 2-3 weeks. . . . He follows with a pulmonologist as well." (Tr. 194). These statements are not supported by the medical evidence.

Plaintiff's medical records reflect no hospitalizations and only one emergency room visit for shortness of breath on May 23, 2010. Monfra presented to an emergency room four times for complaints of back and/or hip pain on September 11, September 20, November 19, and December 2, 2010, and also went once on October 24, 2010, because

of a facial laceration after an altercation.  Physical examination during each of these

emergency room visits and by EMS personnel show that plaintiff's lungs and breathing

were consistently clear without any deficits, labored breathing or shortness of breath,

except for coarse breath sounds on December 2, 2010.  (Tr. 237, 258, 265, 276, 292, 302,

307).  Dr. Butler herself noted only distant breath sounds, but found no other lung or

chest abnormalities.  (Tr. 195).

There are no records from any treating pulmonologist.  The pulmonary function

tests in the record were ordered by Dr. Valentine, the consultative examining physician

who declined to complete plaintiff's examination when he cursed her and lit a cigarette

in her office after the tests.

Further inconsistencies include Monfra's testimony that he cut down to one pack

of cigarettes per day.  He told Dr. Butler the same thing, but his treatment records both

before and after he saw her reflect that he smoked two to three packs per day.  (Tr. 161,

237, 257, 276, 307).

Monfra testified that he has experienced back pain and difficulty breathing for

years.  As the vocational expert noted, plaintiff stated in his application for SSI (Tr. 120)

that he had worked as a landscaper for a year and a painter for 13 years during the past

15 years, even though the ALJ found no earnings records of substantial gainful activity.

The medical evidence indicates that Monfra first experienced serious back pain on

September 11, 2010, when he reported to the West Jefferson Medical Center emergency

21

room that he had injured his back when lifting heavy boards at work the previous day and then exacerbated the injury by lifting a rug at home on the current day.  (Tr. 256-60, 265).  At each subsequent visit to any healthcare provider regarding his back and hip pain, it was noted that his symptoms began in September 2010.  He sought treatment for his back, hip and leg pain from non-emergency providers at Jefferson Community Health Center on only three occasions, September 20, October 1, and December 22, 2010.  (Tr. 205-09).

Records from Monfra's emergency room visits to West Jefferson Medical Center routinely reflect that he did not use any medications at home.  (Tr. 257, 274, 307).  He testified that his pain comes and goes, he has one or two pain-free days every week or two, and he only takes medication when he needs it, about every two days.  A claimant's failure to seek treatment or lack of need for medication are relevant factors to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Anthony v. Sullivan, 954 F.2d 289,  295 (5th Cir. 1992); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

In sum, to the extent that the ALJ credited Dr. Eisenhauer's report, that report is consistent with plaintiff's treatment records.  Substantial evidence supports the ALJ's decision to give great weight to the entirety of the medical record.  The evidence

22

substantially supports the ALJ's decision to accord little weight to Dr. Butler's opinions regarding Monfra's functional limitations and substantially supports the ALJ's findings regarding his residual functional capacity.

Accordingly, this assignment of error lacks merit.

2.    The ALJ did not err in determining plaintiff's credibility.

Monfra argues that the ALJ's credibility determination is deficient because she "only summarized the medical evidence, noted a failed work attempt, and the fact that Plaintiff still smokes cigarettes as factors to discount plaintiffs [sic] subjective complaints" and that the "ALJ failed to connect the objective medical evidence in her credibility analysis."  Record Doc. No. 18 at p. 6.  Monfra contends that the ALJ failed to acknowledge that he had failed at a work attempt "because his back and hip goes [sic] out and because he 'could not catch his wind.'  (Tr. 25)."  Id.

Plaintiff "bears the burden of proving that . . . [he] suffers from a disability" under the first four parts of the sequential inquiry.  Perez, 415 F.3d at 461.  Determining the credibility of his "subjective evidence of pain and disability" is a necessary part of the ALJ's consideration of the evidence.  Id. at 462.

The Fifth Circuit has held that the ALJ is bound to explain her reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'"  Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)).  The ALJ has the

responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164).  Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court.  McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007).  The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required.  James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

The ALJ in this case explained why she found that Monfra's subjective symptoms and alleged limitations were not credible and were inconsistent with the evidence as a whole.  As described in the preceding section of this report and recommendation, the entirety of the evidence does not substantially support plaintiff's allegations that he cannot work at all because his back and hip go out and because he cannot breathe.  The ALJ's conclusions regarding his credibility are substantially supported by the evidence as a whole, including the objective findings on both clinical examination and diagnostic testing of Monfra's lungs and lumbar spine, his failure to seek consistent medical treatment for his impairments, his sporadic use of pain medication, his continued smoking at a higher rate of consumption than he told Dr. Butler and than he testified, and

the other inconsistencies noted in the ALJ's opinion and in the preceding section of this report and recommendation.

Accordingly, this assignment of error lacks merit.

3.     The ALJ's residual functional capacity assessment is not vague.

The ALJ found that Monfra has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with several additional limitations, including the requirement that he be allowed to sit and stand alternately at will, provided he is not off task for more than ten percent of the work period.  Monfra argues that this residual functional capacity assessment is impermissibly vague.  He contends that the ALJ should have specified how long he could stand before returning to sitting and that her failure to do so makes it unclear whether she assessed him with the residual functional capacity for sedentary or light work.  Thus, he argues, the ALJ's hypothetical questions to the vocational expert at the fifth step of the sequential evaluation were erroneous.

The Commissioner's regulations define light and sedentary work, as follows.

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

25

20 C.F.R. § 404.1567(b).

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Id. § 404.1567(a).

These definitions do not contain any specific length of time that the worker must be able to spend standing and/or walking. However, Social Security Ruling 83-10 "elaborates on the definition of 'sedentary work' and explains that 'standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.'" Johnson v. Astrue, 291 F. App'x 548, 551 (5th Cir. 2008) (citing SSR 83-10, 1983 WL 31251, at *5 (1983)).[8] As to light work, Social Security Ruling 83-10 also clarifies that "'[f]requent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5.

---

[8]"'The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions.'" Id. (quoting Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001)).

The Commissioner's definitions and Social Security Ruling 83-10 describe the requirements for a <u>full range of work</u> at a particular exertional level.  A person may have a residual functional capacity that falls below a particular full range of work, yet still have the "ability to engage in substantial gainful work where his or her residual functional capacity falls between the ranges of work indicated in the rules (e.g., the individual who can perform more than light but less than medium work)."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d); <u>accord</u> <u>Mayes v. Astrue</u>, No. 08-10306, 2008 WL 5069750, at *2 (5th Cir. Dec. 2, 2008); <u>Carey v. Apfel</u>, 230 F.3d 131, 145 (5th Cir. 2000).

The ALJ did <u>not</u> determine that Monfra can perform the <u>full</u> range of light work.  The limitations that the ALJ imposed necessarily indicate that he can perform less than the full range of such work.  Because Monfra is limited to less than a full range of light work, the ALJ properly used the testimony of a vocational expert to determine what work he is capable of performing.  <u>Harris v. Barnhart</u>, 204 F. App'x 447, 449 (5th Cir. 2006) (citing <u>Newton</u>, 209 F.3d at 458); <u>Trimiar v. Sullivan</u>, 966 F.2d 1326, 1333 (10th Cir. 1992).

The ALJ's second hypothetical question to Ehlinger described plaintiff's residual functional capacity as the ability to lift up to 20 pounds occasionally and lift and carry up to ten pounds frequently "in light work as defined by the regulations" (Tr. 35), with

several additional limitations, including the ability to alternate sitting and standing at will. (Tr. 36). The ALJ adopted this assessment in her opinion.

As noted, the Commissioner's regulations do not define a specific amount of standing and sitting time for light or sedentary work. The ALJ's opinion is clear that Monfra is <u>not</u> limited to sedentary work because he can lift and carry more than the defined weight limitation of sedentary work. The term "at will" is equally clear about the frequency with which he needs to alternate sitting and standing and does not amount to a limitation to sedentary work.

The ALJ posed a hypothetical to the vocational expert that accounted for plaintiff's age, education, work experience, and physical limitations, which the ALJ found to be credible. There is no ambiguity in the ALJ's residual functional capacity assessment or her second hypothetical question to Ehlinger. The vocational expert testified that a person with this residual functional capacity could perform available jobs, such as security guard, ticket taker and cashier.

Plaintiff was represented by counsel at the hearing, and his counsel questioned the vocational expert. An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by

28

the ALJ's findings and disabilities recognized but omitted from the question)." <u>Bowling</u> <u>v. Shalala</u>, 36 F.3d 431, 436 (5th Cir. 1994); <u>accord</u> <u>Vaught v. Astrue</u>, 271 F. App'x 452, 456 (5th Cir. 2008); <u>Boyd v. Apfel</u>, 239 F.3d 698, 706-07 (5th Cir. 2001).

In this case, plaintiff's counsel asked Ehlinger only whether Monfra had any skills transferable to sedentary work, to which Ehlinger responded, "No." (Tr. 37). However, the ALJ did not find that plaintiff is limited to sedentary work. The vocational expert's testimony is substantial evidence on which the ALJ can rely to determine that plaintiff can perform available work.

Accordingly, this assignment of error lacks merit.

CONCLUSION

The ALJ had good cause to afford little weight to Dr. Butler's report, which is not substantially supported by the entire medical record. The ALJ's findings regarding plaintiff's credibility are supported by substantial evidence. The ALJ's residual functional capacity assessment is clear and her hypothetical question to the vocational expert is supported by substantial evidence.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[9]

New Orleans, Louisiana, this _____13th_____ day of August, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[9]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.